**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| CARTER MCGEE, *et al*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 2:12-cv-00535-PMP-VCF |
| v. ) | |
| ) | **O R D E R** |
| HANGER PROSTHETICS & ORTHOTICS, ) | |
| INC, *et al.,* ) | (Motion for Protective Order #16) |
| ) | |
| Defendants. ) | |

Before the court is plaintiffs' Motion for Protective Order. (#16). Defendants filed an Opposition (#19), and plaintiffs filed a Reply (#20). The court held a hearing on April 17, 2013.

**I.    Background**

Plaintiffs Carter, Amanda, and Donald McGee filed their complaint in the Eighth Judicial District Court, Clark County, Nevada, on March 13, 2012, asserting claims against defendants Hanger Prosthetics & Orthotics, Inc, and Hanger Prosthetics & Orthotics West, Inc, (hereinafter "Hanger") for (1) negligence, (2) strict products liability, (3) negligent infliction of emotional distress, and (4) breach of warranty. (#1-1). Plaintiffs allege that Carter, Amanda and Donald's son, was diagnosed at the age of three-four months old with plagiocephaly, macroephaly, and torticollis (i.e. twisted neck in which the head is tipped to one side, while the chin is turned to the other). *Id.* Plaintiffs assert that their doctor recommended that Carter obtain a cranial helmet through Hanger. *Id.* After Carter began treatments at Hanger locations in Las Vegas, Hanger ordered a helmet for Carter that was supposed to arrive in two weeks. *Id.* The helmet did not arrive until one month later. *Id.*

Plaintiffs allege that Carter was fitted for his helmet by Hanger, and that Amanda was instructed that Carter was to wear it 23 hours a day. *Id.* During a follow-up visit, Hanger drilled holes in the back on the helmet to alleviate any sweating and told Amanda that Carter only had to wear the helmet when

he slept. *Id.* The next follow-up appointment was not until two months later, and Hanger informed Amanda during that appointment that there was little to no hope that Carter's condition would get better. *Id.* Amanda then took Carter to Cranial Technologies, who opined that Hanger should have scheduled Carter for follow-up visits every two weeks and that they had "lost some time" in his treatments. *Id.* Plaintiffs allege that due to Hanger's negligence, Carter suffers physical and mental defects that affect his daily life, including that he did not begin to speak until he was two-and-one-half years old and that it is difficult for him to speak and to understand his speech. *Id.*

Defendants Hanger removed the action to this court on March 30, 2012, based on diversity of citizenship under 28 U.S.C. § 1332(a)(1). (#1). Defendants filed an answer to the complaint on April 11, 2012, asserting 29 affirmative defenses. (#5). On May 15, 2012, the parties filed a joint discovery plan and scheduling order (#10), which the court signed on the next day (#11). On February 8, 2013, the parties filed a stipulation to extend discovery plan and scheduling order (#14), which the court signed on February 11, 2013, extending the discovery plan an additional 180 days (#15). Plaintiffs filed the instant motion for protective order on March 4, 2013. (#16). The court entered a minute order on March 13, 2013, staying the depositions that are the subject of the motion for protective order and scheduling a hearing on the motion (#16) for April 26, 2013. (#18). Defendants filed their opposition on March 19, 2013 (#19), and plaintiffs filed their reply on March 28, 2013 (#20). On March 29, 2013, the court issued a minute order vacating the April 26, 2013, hearing and re-scheduling it for April 17, 2013. (#21).

**II.     Motion For Protective Order (#16)**

    **A.     Relevant Facts**

Plaintiffs assert that their counsel discussed with defense counsel conducting the depositions of the plaintiffs, and that counsel agreed to schedule Carter's IME and Amanda's deposition during the same time-frame, since the plaintiffs live in Ontario, Canada. (#16). Plaintiffs also asserts that their counsel made clear that (1) the plaintiffs would oppose taking Carter's deposition, as he is only five

2

years old, (2) Donald's deposition would need to take place in Canada via video conference, as to not jeopardize his pursuit of becoming a Canadian citizen by leaving the country, and (3) that if Hanger were to unilaterally notice the depositions, the plaintiffs would file a motion for protective order. *Id*. Hanger sent notices to take Amanda, Carter, and Donald's depositions on March 19, 2013, in Las Vegas, Nevada. *Id* (Exhibit 1). Plaintiffs' counsel attempted to contact defense counsel, but was unable to reach counsel and did not receive a phone call back. *Id.*

Defense counsel agrees with plaintiffs' summary of the facts, except for stating that defense counsel was not aware of the fact that Donald was in the process of obtaining his citizenship until recently, and that defense counsel unilaterally noticed the depositions because counsel had not heard back from plaintiffs' counsel regarding available dates. (#19).

**B.    Arguments**

**1. Carter's Deposition**

Plaintiffs ask this court to enter a protective order forbidding the defendants from deposing Carter, who is five years old. (#16). Plaintiffs argue that the deposition of Carter would result in annoyance, embarrassment, oppression, and undue burden. *Id.*   Plaintiffs state that (1) "Carter has insufficient cognitive ability to provide accurate or reliable answers...," (2) Carter was an infant when he received treatments, (3) Carter does not have the emotional maturity to undergo the deposition, (4) it would be oppressive to subject him to the probing questions at this stage in his maturity, (5) Carter has no understanding of the concept of perjury, (6) Hanger can discover information regarding Carter through less oppressive and burdensome means, such as an IME or evaluating his medical records, and (7), as Hanger has failed to state what the specific parameters of the deposition are, the plaintiffs are left not knowing what Carter will be asked about. *Id.*

Defendants argue that they are entitled to "observe [Carter's alleged permanent, cognitive, and behavior injuries], as they would be entitled to any other [p]laintiff in this scenario." (#19). Defendants state that pictures and independent medical examination "should not be the alternative given to

3

HANGER when it is [p]laintiffs who have put Carter's physical and mental abilities at issue in this litigation." *Id.* Defendants assert that Amanda and Donald could be present for the deposition, and that the "video deposition[1] would not cause an undue burden as Carter must travel to Las Vegas, Nevada for the independent medical examination presumably with Amanda." *Id.*

Defendants also assert that if the court is concerned with the scope of the deposition, the court can limit it as it sees fit. *Id.* Defendants argue that plaintiffs' counsel "has failed to recognize...that by naming Carter [as] a [p]laintiff in this case, HANGER has the right and is afforded the opportunity to depose any party in the litigation with the exceptions stated in NRCP[2] 30, none of which Carter falls into." *Id.*

Plaintiffs assert in their reply, that the exceptions of Rule 26(c)(1) are applicable to Carter, even though he is a party to this action, and that the argument that he <u>must</u> be deposed because he is a party lacks merit. (#20). Plaintiffs restate that any "observation" should be conducted by a medical professional during an independent medical examination, and not by an attorney, who does not appear to have medical training of any kind. *Id.* Plaintiffs state that if the court is inclined to permit the deposition, the court should limit the scope to questions regarding Carter's current physical, mental, and behavioral condition. *Id.*

### 2. Amanda's Deposition

Plaintiffs assert that after counsel received the notice of deposition, counsel informed defense counsel that Amanda, who lives in Canada, was not available to be in Las Vegas for her deposition on March 19, 2013, but that she would be available after April 12, 2013. (#16). Plaintiffs argue that no

---

[1] The parties do not discuss or argue regarding conducting Carter's deposition via video (#16, #19, and #20), and this is the only reference to a video deposition of Carter. During the hearing, the parties discussed video tapping the deposition/meeting with Carter, but did not agree to conduct the deposition via video conference. (#22).

[2] As the court is sitting in diversity jurisdiction (#1), the substantive state law applies and the *procedural* federal law applies. See *Erie R. Co. v. Tompkins*, 304 U.S. 64, 92, 58 S. Ct. 817, 828, 82 L. Ed. 1188 (1938)("The line between procedural and substantive law is hazy, but no one doubts federal power over procedure.").

prejudice will result from continuing the deposition date, as the discovery cut-off date is not for another seven months. *Id.* Plaintiffs ask this court to enter a protective order requiring Hanger to notice the deposition for a mutually agreeable date *after* April 12, 2013. *Id.*

Defendants state that since the March 19, 2013, deposition was stayed, defendants agree to find an mutually agreeable date and time for Amanda to appear at her deposition in Las Vegas, Nevada. (#19). Plaintiffs assert in their reply that since the defendants are amenable to finding a mutually agreeable date and time for the deposition, the court's intervention is no longer necessary. (#20).

**3. Donald's Deposition**

The plaintiffs assert that Donald is in the process of pursuing his Canadian citizenship and that coming to the states for his deposition could jeopardize this process. (#16). Plaintiffs ask this court to enter a protective order requiring that Donald's deposition be conducted in Canada at a mutually agreeable time. *Id.*

Defendants argue that plaintiffs are not entitled to a protective order regarding defendants attempting to take Donald's deposition in Las Vegas, as Donald is a named plaintiff in this litigation and voluntarily chose Clark County, Nevada as the venue to file the complaint. (#19). Defendants also argue that they presume that plaintiffs chose this as the venue for convenience, as they used to be residents of Las Vegas, and that Hanger did not choose this venue and should not have to incur the costs associated with either traveling to Canada for Donald's deposition and/or the costs associated with a video deposition for Donald. *Id.* Defendants state that if the court is inclined to enter a protective order regarding Donald having to appear in Las Vegas for his deposition, the court should make plaintiffs bear the cost of the video deposition or of defense counsel's travel to Canada. *Id.*

Plaintiffs argue that the fact that Donald's Canadian citizenship could be jeopardized outweighs the "minor inconvenience" to defendants of taking Donald's deposition via video conference or in Canada**.** (#20). Plaintiffs also argue that defendants cite no authority for their position that plaintiffs should bear the cost of the deposition if it occurs outside of Las Vegas or via video conference. *Id.*

5

**C.     Relevant Law/Recommendation**

Rule 26(b)(2)© provides that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(c)(emphasis added). Pursuant to Fed. R. Civ. P. 30(a)(1), "[a] party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2)."

**1. Carter's Deposition**

The court inquired during the hearing whether Carter was going to attend the trial and whether he was going to testify at trial. (#22). Plaintiffs' counsel stated that Carter would most likely attend the trial, but that he was uncertain at this time as to whether Carter would testify. *Id.* The court held that if there is a possibility that Carter will testify at trial, the defendants have the right to depose him. *Id.* The court also recognized that a normal deposition may not be the proper means to accomplish the defendants' goal in conducting the deposition, which is to observe Carter's behavior and mental and physical condition. *Id; See* Fed. R. Civ. P. 30. (Rule 30 does not mention "observing" a deponent, rather it refers to the deponent's "testimony.").

The court stated that an IME under Rule 35[3] would provide the defendants with information regarding Carter's condition. *Id.* Defense counsel argued to the court that the IME will be insufficient

---

[3]"The court where the action is pending may order a party whose mental or physical condition--including blood group--is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35 (a)(1).

6

to accomplish their goal, as the IME will only be a physical examination, not functional or cognitive. *Id.* Defense counsel stated that it is their desire to engage in a conversation with Carter and not to question him regarding the treatments he received as an infant. *Id.*

The court finds that a video tapped meeting with Carter, and not a formal deposition under the penalty of perjury, is the best means to accomplish the defendants' goal while not subjecting Carter to an intrusive deposition. *See* Fed. R. Civ. P. 26(b)(2)© ("the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (I) the discovery sought...can be obtained from *some other source* that is more convenient, less burdensome, or less expensive.")(emphasis added). The parties have until May 1, 2013, to meet and confer in a good faith effort to agree upon the specifics regarding this meeting and to file a stipulation with the court. If the parties are unable to reach an agreement, a motion may be filed.

**2. Donald's Deposition**

Pursuant to Fed. R. Civ. P. 30(a)(1), "[a] party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). "Under Rule 30(b)(4), the court may order "that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4). "Ordinarily, "the deposition of a party may be noticed wherever the deposing party designates, subject to the Court's power to grant a protective order." *Fausto v. Credigy Services Corp.*, 251 F.R.D. 427, 429 (N.D. Cal. 2008)(quoting *Turner v. Prudential Ins. Co. of America*, 119 F.R.D. 381, 383 (M.D.N.C.1988)). "Once their protection is sought, district courts have wide discretion to establish the time and place of depositions. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir.1994). Courts consider the relative convenience of and hardships to the parties when determining whether there is good cause to grant a protective order. *Id.* at 1166 (finding no abuse of discretion where Hong Kong-based corporate representatives were ordered to appear for deposition in San Francisco, since they previously had violated an order to appear in Hong Kong.)" *Id* at 429-30.

Defense counsel stated during the hearing that the defendants do not oppose a video conference,

7

but would a prefer a live deposition. (#22). Defense counsel also argued that plaintiffs should bear all expenses if the protective order is entered. *Id.* The court is sensitive to plaintiff Donald's situation, but recognizes that plaintiffs did choose to commence this action in the District of Nevada. In considering the hardships and conveniences of the parties' with regard to Donald's deposition, the court finds that forcing plaintiff Donald to risk compromising his citizenship to Canada (where his wife and child live) outweighs any possible inconvenience upon defendants in conducting the deposition via video conference or traveling to Canada. *See Hyde & Drath*, 24 F.3d at 1166.

The court grants plaintiffs' request for a protective order from Donald having to appear in Las Vegas, NV for the deposition, but orders as follows: defendants may either (1) conduct the video conference deposition of Donald, and plaintiffs will bear the cost of the video, or (2) conduct the deposition in Canada, and plaintiffs will contribute one-fourth of defense counsel's reasonable travel expenses. *See Hyde & Drath*, 24 F.3d at 1166 (the court has wide discretion when ruling on a motion for protective order for a deposition.).

Accordingly, and for good cause shown,

IT IS ORDERED that plaintiffs' Motion for Protective Order (#16) is GRANTED in part and DENIED in part, as discussed above.

IT IS FURTHER ORDERED that the parties have until May 1, 2013, to meet and confer in a good faith effort to agree upon the specifics regarding the meeting with Carter and to file a stipulation with the court. If the parties are unable to reach an agreement, a motion may be filed.

IT IS FURTHER ORDERED that defendants may either (1) conduct Donald's deposition via video conference, and plaintiffs will bear the cost of the video, or (2) conduct Donald's deposition in

///

///

///

Canada, and plaintiffs will contribute to one-fourth of defense counsel's reasonable travel expenses.

DATED this 18th day of April, 2013.

**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**